UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RODERICK GENE REED, | No.  1:15-cv-01019-SKO  HC |
| Petitioner, | **ORDER DISMISSING HABEAS PETITION FOR LACK OF JURISDICTION** |
| v. | |
| ANDRE MATEVOUSIAN, Warden, USP-Atwater, | **(Doc. 24)** |
| Respondent. | |

Petitioner Roderick Gene Reed is a federal prisoner proceeding with a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241.[1]  Respondent Andre Matevousian, Warden of the U.S. Penitentiary at Atwater, California, moves to dismiss the petition for lack of jurisdiction. For the reasons set forth below, the Court agrees and dismisses the petition.

I.    **Factual and Procedural Background**

From 1987 to 1995,[2] Petitioner, and 18 co-defendants[3] participated in a conspiracy to distribute cocaine and cocaine base (crack cocaine), and engaged in various other drug and

---

[1] Pursuant to 28 U.S.C. § 636(c)(1), both parties consented in writing to the jurisdiction of a United States Magistrate Judge to conduct all further proceedings in this case, including the entry of final judgment.
[2] Following a state conviction related to drug trafficking, Petitioner was incarcerated from July 1992 through August 15, 1994.
[3] The co-defendants were Bobby Wayne Reed, Darrell Wayne Sauls, Fredrick Asberry, Kendra Bagley, Cedric Clayborne, Keith Franklin, Marcus Leland Freeman, Jesse Jackson Jr., Melonique Lister, Edward Gabriel McBrown, Anthony Morrow, Freddie Eugene Phillips, Evangela Asberry, Kevin Reed, Frank Stolden, Rudy Williams, Gloria Atkins Wright, and Stacey Wynn.  Bobby Reed, Kevin Reed, and Petitioner are brothers.  Evangela Asberry, formerly Evangela Reed, and her brothers, Darron and Terry Reed, are not related to the other Reed brothers.

1

firearms crimes.[4]  On June 5, 1996,  a grand jury in the U.S. District Court for the Northern District of Texas issued a 31-count indictment.  Counts 1 and 21-24 charged Petitioner with violations of 21 U.S.C. §§ 846, 841(a)(1) and (b) (1)(C), 856(a)(1), and 18 U.S.C. §§ 922(g)(1) and 924(e)(1).  On July 5, 1996, the government filed notice of Petitioner's eligibility for an enhanced sentence pursuant to 21 U.S.C. § 851(a)(1), based on his prior felony convictions.

On August 16, 1996, following a five-day trial, the jury convicted Petitioner on count one and counts 21-24.  On November 26, 1996, the court sentenced Petitioner to life imprisonment on counts 1 (conspiracy to distribute cocaine and cocaine base) and 24 (distribution of cocaine and cocaine base), with concurrent sentences of 360 months on count 21(distribution of cocaine), 240 months on count 22 (maintaining a business for purposes of manufacturing or distributing cocaine and cocaine base), and 120 months on count 23 (possessing a firearm after previous conviction of a violent felony or serious drug crime).

Petitioner has filed seven post-conviction motions:

(1)  On December 3, 1996, Petitioner filed a notice of appeal.  On June 22, 1998, the U.S. Court of Appeals for the Fifth Circuit affirmed the conviction and sentence.  *United States v. McBrown*, 149 F.3d 1176 (table), 1998 WL 413981 (5th Cir. June 22, 1998) (No. 96-11491) (Doc. 24-7).

(2)  On August 16, 1999, Petitioner filed a motion for relief under 28 U.S.C. § 2255 in which he asserted multiple claims of ineffective assistance of counsel.  The District Court for the Northern District of Texas denied the motion on August 21, 2002.

(3)  On June 19, 2009, Petitioner filed a motion, purportedly under 28 U.S.C. § 1651 ("the All Writs Act") in which he contended, among other things, that the notice of enhanced sentence (21 U.S.C. § 851) was defective.  On June 25, 2009, District Court for the Northern District of

---

[4] A detailed factual summary is set forth in *United States v. McBrown*, 149 F.3d 1176 (table), 1998 WL 413981 (5th Cir. June 22, 1998) (No. 96-11491) (Doc. 24-7).

Texas rejected Petitioner's argument that he was actually bringing a petition for writ of *coram nobis*, finding that Petitioner could not bring such a petition while he was still in custody. The district court re-characterized the motion as second or successive § 2255 motion and denied the motion because Petitioner did not first obtain the authorization of the Fifth Circuit Court of Appeal, as required by 28 U.S.C. § 2255(h).

On December 28, 2009, Petitioner appealed. On May 14, 2010, the Fifth Circuit agreed with the district court that Petitioner was not entitled to pursue relief through a petition for writ of *coram nobis*.

(4) On November 18, 2010, Petitioner filed a petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 in the U.S. District Court for the Eastern District of Kentucky. Among other grounds, the petition contended that the government's notice of enhanced sentence (21 U.S.C. § 851) was defective. On February 15, 2011, the court dismissed the petition, holding that it lacked jurisdiction under § 2241.

On May 17, 2011, Petitioner appealed the decision to the Sixth Circuit Court of Appeal, which affirmed the district court's denial of the petition. On March 12, 2012, Petitioner appealed the decision to the Fifth Circuit, which affirmed on October 19, 2012.

(5) On February 24, 2012, in the Northern District of Texas, Petitioner moved to modify his term of imprisonment pursuant to 18 U.S.C. § 3582(c)(2). The court denied the motion on March 1, 2012.

(6) On February 24, 2014, Petitioner sought the Fifth Circuit's authorization to file a second or successive § 2255 motion. Petitioner contended that (1) the newly discovered affidavits of Kendra Bagley, Glenn Williams, and Melonique Lister established his actual innocence, and (2) that the agents who detained Petitioner at a traffic stop while the Flamingo Street house was searched violated Petitioner's Fourth Amendment rights. On August 1, 2014,

3

the Fifth Circuit denied authorization of a second or successive § 2255 motion, stating,

"[Petitioner] fails to show his proposed claims are based on either newly discovered evidence that

would clearly establish that no reasonable factfinder would have found him guilty or a new rule

of constitutional law made retroactive to cases on collateral review by the Supreme Court that

was not previously available."  Doc. 24-28 at 1-2.  The court added that Petitioner had proffered

no new evidence establishing Petitioner's actual innocence.

(7)  On July 6, 2015, Petitioner filed a petition in this court for a writ of habeas corpus

pursuant to 28 U.S.C. § 2241.  The petition repeats Petitioner's contentions in his February 24,

2014, motion to the Fifth Circuit for authorization to file a second or successive § 2255 motion

that (1) the newly discovered affidavits of Kendra Bagley, Glenn Williams, and Melonique Lister

established his actual innocence, and (2) that the agents who detained Petitioner at a traffic stop

while the Flamingo Street house was searched violated Petitioner's Fourth Amendment rights,

and his earlier contention that (3) the government's notice of enhanced sentence (21 U.S.C.

§ 851) was defective.  The petition adds a claim that (4) the prosecution's misconduct violated

Petitioner's claim to a fair and impartial trial, which incorporates multiple issues raised in

previous post-conviction actions.

Respondent moved to dismiss the petition on November 25, 2015, and amended the

motion on June 17, 2016.

## II.    Standards for Determining § 2241 Jurisdiction

### A.    In General

A federal court may not consider a habeas action over which it has no jurisdiction.

*Hernandez v. Campbell*, 204 F.3d 861, 865 (9th Cir. 2000).  "[T]o determine whether jurisdiction

is proper, a court must first determine whether a habeas petition is filed pursuant to § 2241 or

§ 2255 before proceeding to any other issue."  *Id.*

4

A federal prisoner may challenge the manner, location, or conditions of a sentence's execution by filing a petition pursuant to § 2241 in the "custodial court," that is, the court of the district in which he is incarcerated.  *Stephens v. Herrera*, 464 F.3d 895, 897 (9th Cir. 2006); *Hernandez*, 204 F.3d at 864-65.  If the prisoner challenges the legality of his conviction or sentence as Petitioner does here, however, a motion under 28 U.S.C. § 2255, filed in the court of conviction, is the exclusive means by which he may test the legality of his detention.  *Stephens*, 464 F.3d at 897; *Tripati v. Henman*, 843 F.2d 1160, 1161-62 (9th Cir. 1988).  Generally, a prisoner may not collaterally attack a federal conviction or sentence by filing a petition for writ of habeas pursuant to 28 U.S.C. § 2241 corpus in the custodial court, as Petitioner seeks to do in this case.  *Tripati*, 843 F.2d at 1162.

**B.      The "Escape Hatch"**

An exception to the general rule, commonly referred to as the "escape hatch" or the "savings clause," "permits a federal prisoner to file a habeas corpus petition pursuant to § 2241 to contest the legality of a sentence where his remedy under § 2255 is inadequate or ineffective to test the legality of his detention."  *Stephens*, 464 F.3d at 897 (citations and internal quotations omitted); *see also* 28 U.S.C. § 2255; *Harrison v. Ollison*, 519 F.3d 952, 956 (9th Cir. 2008) ("If the prisoner's claims qualify for the escape hatch of § 2255, the prisoner may challenge the legality of a sentence through a § 2241 petition in the custodial court"); *Hernandez*, 204 F.3d at 864-65; *United States v. Pirro*, 104 F.3d 297, 299 (9th Cir. 1997).  The exception is very narrow. *Ivy v. Pontesso*, 328 F.3d 1057, 1059 (9th Cir. 2003).  "[A] prisoner may file a § 2241 petition under the escape hatch when the prisoner (1) makes a claim of actual innocence, and (2) has not had an unobstructed procedural shot at presenting that claim."  *Marrero v. Ives*, 682 F.3d 1190, 1192 (9th Cir. 2012) (internal quotations omitted).

///

5

"The general rule in this circuit is that the ban on unauthorized second or successive petitions does not per se make § 2255 'inadequate or ineffective.'"  *Lorentsen v. Hood*, 223 F.3d 950, 953 (9th Cir. 2000) (quoting 28 U.S.C. § 2255).  The remedy under § 2255 usually will not be deemed inadequate or ineffective merely because a prior § 2255 motion was denied or because a remedy under § 2255 is procedurally barred.  *See Aronson v. May*, 85 S.Ct. 3, 5 (1964); *Tripati*, 843 F.2d at 1162-63; *Williams v. Heritage*, 250 F.2d 390, 390 (9th Cir. 1957); *Hildebrandt v. Swope*, 229 F.2d 582, 583 (9th Cir. 1956).  The burden is on the petitioner to show that the remedy is inadequate or ineffective.  *Redfield v. United States*, 315 F.2d 76, 83 (9th Cir. 1963).

Because, in this case, Petitioner challenges the validity and constitutionality of the sentence imposed by the Northern District of Texas rather than the administration of his sentence at United States Penitentiary-Atwater, proper procedure required him to file a motion pursuant to § 2255 in the Northern District of Texas rather than a petition pursuant to § 2241 in this Court. Because Petitioner has previously filed multiple § 2255 motions, he must first secure authorization from the Fifth Circuit to file a second or successive § 2255 motion.  Petitioner moved the Fifth Circuit for authorization to bring a second or successive § 2255 motion with regard to the first three claims in the above-captioned petition, and the Fifth Circuit denied the motion.  To proceed with the above-captioned § 2241 petition in this Court, Petitioner bears the burden of establishing that a § 2255 motion is an inadequate or ineffective remedy.

**C.      Actual Innocence**

In the Ninth Circuit, a claim of actual innocence for purposes of the § 2255 savings clause is tested using the standard articulated by the U.S. Supreme Court in *Bousley v. United States*, 523 U.S. 614 (1998).  *Stephens*, 464 U.S. at 898.

"To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  *Bousley*,

523 U.S. at 623 (quoting *Schlup v. Delo*, 513 U.S. 298, 327-28 (1995)) (*internal quotation marks omitted*).  The required showing demands that the petitioner make a showing of factual innocence, "not mere legal insufficiency."  *Bousley*, 523 U.S. at 623.  In other words, the exception concerns "actual as opposed to legal innocence."  *Sawyer v. Whitley*, 505 U.S. 333, 339 (1992).  The actual innocence requirement is not satisfied when a petitioner merely asserts that he was factually innocent of his crimes of conviction but does not introduce "evidence tending to show that he did not commit the [acts] underlying his convictions."  *Marrero*, 682 F.3d at 1192. The petitioner bears the burden of proof.  *Lorentsen*, 223 F.3d at 954.  When a prisoner cannot establish actual innocence, the claim must proceed under § 2255.

"A prototypical example of 'actual innocence' in a colloquial sense is the case where the State has convicted the wrong person of the crime."  *Sawyer*, 505 U.S. at 340.  Although such claims are regularly made after conviction in both state and federal courts, they are "quite regularly denied because the evidence adduced in support of them fails to meet the rigorous standards for granting such motions."  *Id.*  Only in rare instances, such as when another person has confessed to the crime, is it "evident that the law has made a mistake."  *Id.*

**D.     Unobstructed Procedural Shot**

To determine whether a Petitioner has had an unobstructed shot at pursuing a claim, the Court must consider (1) whether the claim's legal basis arose after Petitioner had exhausted his direct appeal and first § 2255 motion and (2) whether the law changed in any way relevant to the claim after the § 2255 motion.  *Alaimalo v. United States*, 645 F.3d 1042, 1047 (9th Cir. 2011). An intervening court decision does not establish that a petitioner failed to have an unobstructed procedural shot at a claim unless it "effect[s] a material change in applicable law."  *Harrison*, 519 F.3d at 960.

///

When a § 2241 petitioner previously raised the same claim in a § 2255 motion, he has "had an unobstructed procedural shot to pursue his claim." *Harrison*, 519 F.3d at 961.  "[I]t is not enough that Petitioner is presently barred from raising his claim of innocence by motion under § 2255.  He must never have had the opportunity to raise it by motion." *Ivy*, 328 F.3d at 1060.

"In determining whether a petitioner had an unobstructed shot to pursue his claim, the Court must ask whether petitioner's claim 'did not become available' until after a federal court decision." *Harrison*, 519 F.3d at 960.  "In other words, we consider: (1) whether the legal basis for petitioner's claim 'did not arise until after he had exhausted his direct appeal and first § 2255 motion; and (2) whether the law changed 'in any way relevant' to petitioner's claim after that first § 2255 motion." *Id.*

### III.   Claim One: "Newly Discovered" Affidavits

The first claim alleges that the "newly discovered" affidavits of Kendra Bagley, Glenn Williams, and Melonique Lister establish Petitioner's actual innocence.  The statements, or portions of them, are appended to the petition.  The petition itself emphasizes that these affidavits form the basis for a finding of Petitioner's factual innocence.

### A.   Contents of the Affidavits

#### 1.   Williams' July 2000 Statement

Williams' notarized statement is dated July 18, 2000.[5]  According to Williams, (1) he repeatedly contacted Petitioner's trial attorney, Susan James, to advise her of information set forth in 12 conclusory statements: (2) the drugs and contraband seized from the Flamingo Road residence did not belong to Petitioner; (3) Petitioner had no knowledge of Williams' activities at the Flamingo Road residence; (4) Williams was Petitioner's childhood friend, who had never worked with or for Petitioner in any illegal drug trade; (5) Williams purchased the baking soda to

---

[5] Williams was to have testified as a government witness at trial but did not do so.  *See McBrown*, 1998 WL 413981at *9.  The record before this Court provides no further information concerning Williams' not testifying at trial.

be used to process the cocaine at the Flamingo Road residence; (6) Petitioner had no knowledge

of the contraband confiscated from Williams' car during the traffic stop; (7) Petitioner was never

in actual or constructive possession of the drugs and gun confiscated from the Flamingo Road

residence; (8) at the time of the search, Williams was living at the Flamingo Road residence with

Petitioner's ex-girlfriend Lois (last name unknown); (9) Petitioner was living with his mother on

Grady Street in Fort Worth and his girlfriend Sharon Collins "in Miller Apt."; (10) Williams

never saw Petitioner sell $10 or $20 pieces of crack cocaine to Kendra Bagley or anyone else;

(11) Petitioner and Williams had never been present during any drug deal with Mike Mitchell at

the Castleman house of Williams' girlfriend; (12) Williams reiterated his earlier statements to

Channel 5 news "concerning (SEX-FOR-Testimony) scandal in exchange false information on

local drug cases"; and (13) Petitioner never managed or supervised Williams in any illegal drug

trade.  Doc. 1 at 33-34.

### 2.   **Bagley's Statements**

Kendra Bagley was a high school friend of Petitioner and a co-defendant in the 1996 drug conspiracy trial.  In Bagley's first notarized statement, dated September 4, 2003, she states that she was interviewed several times about her knowledge and participation in Petitioner's case both before and after she was confined to the Mansfield Jail in June 1996.[6]  Bagley never signed a statement for the investigator: the agents and attorney took notes, which they read back to her for accuracy.  She states that she neither used nor purchased crack while pregnant in 1994.  Bagley stated:

> The Agent Fat Sam promised me that if I would assist them that he would make sure I get 5 years and he would take care of my state case.  I received 5 years Federal sentence but the State of Texas still revoke my parole/probation and sent me back to jail.

Doc. 1 at 37.[7]

///

---

[6] On June 23, 1996, the Arlington [Texas] Police Department arrested Bagley on a robbery charge.  The petition includes the first page of a police report concerning Bagley's statements as a cooperating witness in a June 25, 1996 interview at the Tarrant County Jail.  The portion of the statement included in the petition includes no reference to Petitioner.

[7] A.F. Sam, a Fort Worth police officer and member of the task force investigating the Bobby Reed Organization, testified at trial.  *McBrown*, 1998 WL 413981at *1.   In the record, various persons refer to him as "Fat Sam."

9

Bagley's signature on the second affidavit is dated March 13, 2004, and the notary stamp is dated April 14, 2004.  In the second statement, Bagley states that she was interviewed on multiple occasions, both before and during her confinement at the Mansfield Jail in June 1996. Bagley repeats that Sam persuaded her to testify falsely against Petitioner by promising her that she would receive no more than five years' imprisonment and "that my case with the State of Texas would be handled."  Doc. 1 at 35.  Bagley never signed a written statement but only spoke to Sam, who took notes that he read back to Bagley to ensure their accuracy.  Sam provided Bagley with "details of the Flamingo Road residence."  *Id.*  Bagley always knew Petitioner to live on Grady Street in Forest Hills, Texas.  *Id.*  She denied that she ever sold or purchased drugs for Petitioner or used drugs during her 1994 pregnancy.  *Id.*

### 3.   Lister's Statement

The petition includes portions of a longer notarized statement to which Melonique Lister swore on August 24, 1996, following Petitioner's conviction but before his sentencing.  The portion of the statement appended to the petition begins with a partial paragraph concerning an unidentified person's account of being permitted to have sex with John Clay[8] before returning to jail, then recounts Evangela Asberry's bragging about her performance as a false witness to secure a sentence reduction.  At John Clay's urging, his cousin, Danielle Cornelius "just t[old] the government what they wanted to hear" and "talked Kendra Bagley into testifying this same way." Doc. 1 at 38.  The statement continues in the same vein, recounting false testimony by, and in exchange for government consideration to, Evangela Asberry, Danielle Cornelius, Kendra Bagley, Raynetta Taylor, and Gabrielle Jones, and purports to be based on those witnesses' statements to Lister.

### B.   The Affidavits Do Not Establish Petitioner's Actual Innocence

"To establish actual innocence, petitioner must demonstrate that, in light of all the evidence, it is more likely than not that no reasonable juror would have convicted him."  *Bousley*, 523 U.S. at 623 (quoting *Schlup*, 513 U.S. at 327-28) (*internal quotation marks omitted*).  The affidavits of Bagley, Williams, and Lister do not meet this rigorous standard.

---

[8] John Clay was a government witness at trial.  *McBrown*, 1998 WL 413981at *8.

10

On his direct appeal, Petitioner challenged the sufficiency of the evidence to convict him. Affirming Petitioner's conviction of the conspiracy count, the Fifth Circuit summarized the "overwhelming evidence that Bobby Reed, working in concert with [Petitioner] and others, distributed large quantities of cocaine and cocaine base. All the appellants engaged in drug activities linked to Bobby Reed. A rational jury could find the evidence of an agreement among the alleged conspirators." *McBrown*, 1998 WL 413981 at *5.[9] Both witness testimony and circumstantial evidence amply supported the jury's conclusion that the Flamingo Street home was Petitioner's residence and that the residence functioned as a location for the co-defendants' manufacture and marketing of cocaine and crack cocaine. *Id.* at **5-6.

With regard to his convictions on counts 21-24 of the indictment, Petitioner contended that the proof was insufficient to establish that he lived at the Flamingo Road residence. The Fifth Circuit summarized the evidence and held that a rational jury could have concluded that Petitioner lived there and that the drugs and the firearm discovered in the search of the residence belonged to Petitioner. *Id.* at *6.

When their statements were considered in the context of the record as a whole, the affidavits of Petitioner's friend Williams and co-defendants Bagley and Lister are insufficient to establish that no reasonable juror would have convicted Petitioner if the statements and affidavits had been presented at trial. *See Bousley*, 523 U.S. at 623. Williams' statement is not compelling. Williams' lack of knowledge of Petitioner's drug dealing activities and claim that he never witnessed Petitioner possessing or dealing drugs would not compel a factfinder to acquit Petitioner, particularly in contrast to the other testimonial and circumstantial evidence tending to prove Petitioner's guilt. A reasonable jury could have convicted Petitioner even if it had known the contents of Williams' affidavit.

Bagley's statements present no substantive information concerning Petitioner's innocence or guilt, but merely contend that Bagley lied to the jury for a favorable plea bargain. Since the Fifth Circuit found overwhelming evidence of Petitioner's guilt on appeal, the omission of

---

[9] This decision will not repeat the summary of the factual background set forth in the Fifth Circuit opinion, 1998 WL 413981 at **1-5. The circuit court's findings are incorporated by reference.

1  Bagley's testimony that she purchased cocaine from Petitioner would be unlikely to so change the

2  evidence that no reasonable juror would have convicted Petitioner.  *See McBrown*, 1998 WL

3  413981 at **5-6.

4       Finally, even if Lister's account of various witnesses' boasts of lying and double-crossing

5  the government and their husbands and boyfriends is given credence, her statement presents no

6  substantive basis on which a reasonable factfinder could have relied to conclude that Petitioner

7  was not guilty.  Its sole purpose is to suggest that no trial testimony by the named individuals was

8  reliable.  The statements of Williams, Bagley, and Lister do not support a finding of actual

9  innocence.

10       C.      **Petitioner Had an Unobstructed Procedural Shot to Present Affidavits**

11       Even if the affidavits could establish Petitioner's actual innocence, Petitioner cannot

12  satisfy the other prong of the *Bousley* test, which requires him to establish that he has not had an

13  unobstructed procedural shot at presenting the claim.  *Marrero*, 682 F.3d at 1192.

14       Petitioner introduced Lister's statement in support of his insufficient evidence claim in his

15  direct appeal.  *McBrown*, 1998 WL 413981 at *6.  In particular, Petitioner sought to use Lister's

16  statement to challenge the credibility of Bagley's trial testimony. The Fifth Circuit rejected his

17  argument, stating "A guilty verdict may be sustained if supported only by the uncorroborated

18  testimony of a co-conspirator, even if the witness is interested due to a plea bargain or promise of

19  leniency, unless the testimony is incredible or insubstantial on its face." *Id.* (citing *United States*

20  *v. Gadison*, 8 F.3d 186, 190 (5th Cir. 1993)).  "The testimony of . . . Bagley was not incredible as

21  a matter of law." *McBrown*, 1998 WL 413981 at *6.  This means that Bagley's 2003 and 2004

22  affidavits were prepared after the Fifth Circuit had already determined that even if Bagley was

23  motivated to lie in her trial testimony to secure the benefits promised by the plea deal, Bagley's

24  false testimony would not have changed the verdict convicting Petitioner.

25       The Fifth Circuit also considered Lister's affidavit when it rejected the appellants' *Brady*[10]

26  claim based on the government's failure to turn over evidence that agents permitted Clay's and

27  Williams' sexual encounters.  *McBrown*, 1998 WL 413981 at *8.  After first noting that another

28    

---

[10] *Brady v. Maryland*, 373 U.S. 83 (1963).

affidavit[11] contradicted Lister's affidavit, the opinion continued:

> Assuming that the government was aware of the sexual encounters and suppressed the evidence, we conclude after a careful review of the record that there is not a reasonable probability that the outcome of the trial would have been different if the evidence concerning the sexual encounters had been disclosed.   Glen Williams did not testify, and the alleged sexual favor he received was not relevant to the trial.   As for Clay, we conclude that even if Floyd knowingly allowed a sexual encounter to take place between Clay and Biggins or Clay and Taylor, we can see no reasonable probability that the such [*sic*] evidence would have affected the outcome of trial.

> *McBrown*, 1998 WL 413981 at \*9.

Although the Williams affidavit appended to the petition in the above-captioned case is dated July 18, 2000, it is substantially similar to two other Williams affidavits dated September 23, 1998, and June 22, 1999.   *See* Doc 24-9 at 75-77.   Petitioner appended Williams' 1998 and 1999 affidavits to his first § 2255 motion, which he filed in August 1999.   Doc. 24.   Because the 1999 motion was not denied until August 21, 2002, Petitioner could have submitted the July 2000 to the Texas district court while the motion was still pending.

In his 2014 motion to the Fifth Circuit for leave to file a second or successive § 2255 motion, Petitioner sought to introduce the affidavits of Williams and Bagley, and Lister's statement.   The Fifth Circuit denied authorization to bring a second or successive § 2255 motion, stating:

> "[Petitioner] fails to show that his proposed claims are based on either newly discovered evidence that would clearly establish that no reasonable factfinder would have found him guilty or a new rule of constitutional law made retroactive to cases on collateral review by the Supreme Court that was not previously available.   *See* § 2255(h).   To the extent that [Petitioner] argues actual innocence as a gateway for other claims, he has not proffered any new evidence which demonstrates that "no juror, acting reasonably, would have voted to find him guilty beyond a reasonable doubt." *McQuiggin v. Perkins*, 133 S.Ct. 1924, 1928 (2013) (quoting *Schlup v. Delo*, 513 U.S. 298, 327, 329 (1995)).

> Doc. 24-28 at 1-2.

When a § 2241 petitioner previously raised the same claim in a § 2255 motion, even if he is presently barred from bringing it in a successive § 2255 motion, he has "had an unobstructed

---

[11] The Fifth Circuit did not identify the other affidavit.

1    procedural shot to pursue his claim." *Harrison*, 519 F.3d at 961;  *Ivy*, 328 F.3d at 1060.

2         **D.      Summary**

3         Because Petitioner can establish neither prong of the *Bousley* test, he may not pursue

4    claim one in a § 2241 petition in this Court.

5    **IV.    Claim Two: Fourth Amendment Violation (Traffic Stop)**

6         **A.      Actual Innocence**

7         Claim two alleges that Petitioner's Fourth Amendment rights were violated when officers

8    detained him at a traffic stop to facilitate preparation and execution of a search warrant on his

9    Flamingo Street residence.  Because claim two concerns only the legal propriety of Petitioner's

10   detention at the traffic stop, without any regard for his culpability, or lack of culpability, for the

11   crimes of which he was convicted, it is a legal claim that cannot establish actual innocence.  *See,*

12   *e.g., Stone v. Powell*, 428 U.S. 465, 491 n. 31 (1976) ("[I]n the case of a typical Fourth

13   Amendment claim, asserted on collateral attack, a convicted defendant is usually asking society to

14   redetermine an issue that has no bearing on the basic issue of his incarceration").

15        **B.      Unobstructed Procedural Shot**

16        Petitioner previously raised this claim in his February 24, 2014, petition to the Fifth

17   Circuit in which he sought authorization to bring a second or successive § 2255 motion.  *See* Doc.

18   24-27 at 6, 17.  The Fifth Circuit denied authorization to bring a second or successive § 2255

19   motion, stating summarily, "[Petitioner] fails to show that his proposed claims are based on either

20   newly discovered evidence that would clearly establish that no reasonable factfinder would have

21   found him guilty or a new rule of constitutional law made retroactive to cases on collateral review

22   by the Supreme Court that was not previously available.  *See* § 2255(h)."  Doc. 24-28 at 1-2.

23        In the above-entitled petition, Petitioner contends that the unobstructed procedural shot is

24   satisfied by the intervening change of the law concerning detention of persons incident to a search

25   warrant in *Bailey v. United States*, 133 S.Ct. 1031 (2013).  In *Bailey*, the Supreme Court

26   considered "whether the seizure of the person was reasonable when he was stopped and detained

27   at some distance away from the premises to be searched when the only justification for the

28   detention was to ensure the safety and efficacy of the search."  133 S.Ct. at 1035.

14

1    Police surveillance observed Bailey and another man leave a basement apartment at 103

2    Lake Drive, Wyandanch, New York, as a search unit was preparing to execute a search warrant

3    there in an attempt to locate a handgun.  *Id.* at 1036.  Nothing suggested that the men left because

4    they were aware of the officers' presence or the impending search.  *Id.*  When the men's car was

5    few hundred yards down the street, two detectives followed them for about one mile or five

6    minutes, before pulling the car over and conducting a patdown search of the men.  *Id.*  Bailey

7    identified himself, and both he and his passenger told officers that Bailey was coming from his

8    home at 103 Lake Drive and was driving the passenger home.  *Id.* The officers found no weapons,

9    only a ring of keys in Bailey's pocket.  *Id.*  The officers handcuffed both men and told them they

10   were being detained incident to the search of the premises at 103 Lake Drive.  *Id.*  Bailey then

11   denied living there and stated that anything that might be recovered from the apartment did not

12   belong to Bailey.  *Id.*  When the officers returned to 103 Lake Drive with Bailey and the

13   passenger, the search team had already recovered the handgun and illegal drugs, which had been

14   found in plain sight when they entered the premises.  *Id.*  The confiscated key ring included the

15   key for the apartment door.  *Id.*

16   Bailey was charged with several federal drug and firearm offenses.  *Id.*  He moved to

17   suppress the apartment key and the statements he made to the officers incident to the traffic stop.

18   *Id.*  The district court denied the motion to suppress.  *Id.* at 1037.  Bailey filed a direct appeal of

19   the denial of his suppression motion, and the Second Circuit affirmed.  *Id.*  The Supreme Court

20   granted certiorari to address the differing holdings of the circuit courts on the question of whether

21   *Michigan v. Summers* (452 U.S. 692 (1981)) justified the detention of occupants beyond the

22   immediate vicinity of the premises covered by a search warrant.  *Id.*  The *Bailey* Court held that

23   *Summers* did not authorize such remote detention:

24            Detentions incident to the execution of a search warrant are
         reasonable under the Fourth Amendment because the limited
25       intrusion of personal liberty is outweighed by the special law
         enforcement interests at stake.  Once an individual has left the
26       immediate vicinity of a premises to be searched, however,
         detentions must be justified by some other rationale.
27
         133 S.Ct. at 1042-43.
28

15

1    This case is distinguishable from *Bailey*.  Bailey was challenging the trial court's denial of

2    a suppression motion in the course of a direct appeal.  The evidence that Bailey moved to

3    suppress at trial (Bailey's keys and admissions of residence) was obtained directly from Bailey in

4    the course of the traffic stop.  In contrast, Petitioner moves for suppression in the course of a

5    federal habeas petition filed nearly twenty years after his conviction and seeks to have all counts

6    of his conviction set aside.  Further, Petitioner seeks suppression of evidence seized in the course

7    of the search of 5021 Flamingo Road, not evidence seized in the course of his traffic stop.  Bailey

8    did not seek suppression of the gun and drugs seized from his residence, and the Supreme Court

9    granted the suppression motion solely as to the statements and keys seized in the traffic stop.  *See*

10    *also Cooper v. Haynes*, 2015 WL 5474485 at *2 (E.D.Ark. Aug. 24, 2015) (No. 2:14-cv-00022-

11    BSM-PSH) (characterizing the holding in *Bailey* as one addressing "the permissible area that may

12    be searched pursuant to a search warrant").

13    Even if the *Bailey* holding did apply in this case, the Supreme Court has not held that

14    *Bailey* applies retroactively to cases on collateral review.  "Unless they fall within an exception to

15    the general rule, new constitutional rules of criminal procedure will not be applicable to those

16    cases which have become final before the new rules are announced." *Teague v. Lane*, 489 U.S.

17    288, 310 (1989).  "A new rule is not 'made retroactive to cases on collateral review' unless the

18    Supreme Court holds it to be retroactive." *Hughes v. United States*, 770 F.3d 814, 817 (9th Cir.

19    2014) (quoting *Tyler v. Cain*, 533 U.S. 656, 663 (2001)).  The Supreme Court has not declared

20    *Bailey* to apply retroactively to cases on collateral review.  *See Butler v. United States*, 2015 WL

21    3489557 at *2 n. 3 (D.S.C. June 3, 2015) (Nos. 4:09-cr-00074-TLW; 4:14-cv-00112-TLW);

22    *Gray v. United States*, 2014 WL 2917044 at *12 (E.D.N.C. June 26, 2014) (Nos. 5:10-CR-146-

23    FL-1; 5:12-cv-740-FL); *Bryant v. Reynolds*, 2013 WL 4511292 at *4 (D.S.C. Aug. 23, 2013) (No.

24    2:12-cv-01731-GRA).

25    **C.    <u>Summary</u>**

26    Because Petitioner can establish neither prong of the *Bousley* test, he may not pursue

27    claim two in a § 2241 petition in this Court.

28    //

**V.      Claim Three: Defective Notice of Enhanced Sentence**

      **A.      Actual Innocence**

      Claim three alleges that the government's notice of enhanced sentence (21 U.S.C. § 851) was defective.  A claim of erroneous classification as a career offender "is a purely legal claim that has nothing to do with factual innocence," and cannot bring a § 2241 petition within the escape hatch. *Marrero*, 682 F.3d at 1193.

      **B.      Unobstructed Procedural Shot**

      The record establishes that, from the time the notice was filed, Petitioner was aware of the information concerning his prior state felony drug convictions that was set forth in the government's notice of its intention to seek an enhanced sentence under 21 U.S.C. §§ 841 and 851.  Further, Petitioner actively opposed the imposition of an enhanced sentence beginning in the trial court and continuing into his direct appeal to the Fifth Circuit. As a result, the Court concludes that Petitioner had an unopposed procedural shot at presenting his claim.

      The notice of enhanced sentence pursuant to 21 U.S.C. §§ 841 and 851 was filed on July 5, 1996,  prior to Petitioner's trial in the Northern District of Texas.  "Under § 841, a defendant with two prior felony drug convictions shall be sentenced to life if the defendant is convicted of a drug offense involving five or more kilograms of cocaine or fifty or more grams of crack cocaine." *McBrown*, 1998 WL 413981 at \*13.  A defendant who challenges the factual basis of his prior convictions has the burden of proof.  21 U.S.C. § 851(c)(2).

      Petitioner had two prior state felony drug convictions. *McBrown*, 1998 WL 413981 at \*13.  At his sentencing hearing, Petitioner first contended that his guilty pleas in the two state case were not knowing and voluntary since he pleaded guilty while under the influence of cocaine. *Id.*  Based on the evidence, the district court found that Petitioner, who had been incarcerated for the three weeks prior to the second guilty plea, was not under the influence of cocaine when he entered that plea. *Id.*  Based on the testimony and the written findings of the state court that accepted the first plea, the district court found that Petitioner understood the proceedings and that his first plea was voluntary. *Id.*

//

1    On direct appeal, Petitioner also alleged error in the presentence report concerning drug

2    quantity, his role as a manager or supervisor in the drug conspiracy, and his possession of a

3    firearm.  *Id.*  The Fifth Circuit found Petitioner's contention to be moot since his prior convictions

4    required the imposition of a life sentence if the current offense involved more than fifty grams of

5    crack cocaine without regard for those alleged errors.  *Id.*  The court found that sufficient

6    evidence established that Petitioner possessed more than fifty grams of crack based on the amount

7    of drug seized from the Flamingo Road residence alone, without considering the substantial

8    amounts of cocaine and crack cocaine trafficked by the conspiracy.  *Id.*

9    Thereafter, Petitioner made multiple unsuccessful attempts to continue to prosecute this

10   claim.  On June 19, 2009, Petitioner attempted to renew his claim of a defective notice of

11   enhanced sentencing as part of a motion the Petitioner claimed to make pursuant to 28 U.S.C. §

12   1651 (the All Writs Act) and characterized as a petition *coram nobis*.  The Northern Texas

13   District Court held that a prisoner could not bring such a petition while still in custody,

14   recharacterized it as a second or successive § 2255 motion, and dismissed the motion because

15   Petitioner had not first secured authorization from the circuit court.  The Fifth Circuit affirmed.

16   In November 2011, Petitioner attempted to advance the claim again in a § 2241 petition

17   filed in the Eastern District of Kentucky, which dismissed for lack of jurisdiction.  Both the Sixth

18   Circuit and the Fifth Circuit affirmed the dismissal on appeal.

19   Petitioner contends that despite his long history of challenges to the enhanced sentencing

20   notice, he is entitled to raise the issue again following a change of applicable law in *Persaud v.*

21   *United States*, 134 S.Ct. 1023 (mem.) (2014).  In *Persaud*, the Supreme Court granted *certiorari*,

22   vacated the judgment of the 4th Circuit Court of Appeals, and remanded the case for further

23   consideration in light of the position advocated in the brief of the U.S. Solicitor General.  The

24   summary order did not set forth any substantive holding, much less a holding to be applied

25   retroactively in collateral proceedings.

26   **C.**    **<u>Summary</u>**

27   Because Petitioner can establish neither prong of the *Bousley* test, he may not pursue

28   claim three in a § 2241 petition in this Court.

18

**VI.    Claim Four: Prosecutorial Misconduct**

Claim four, alleging prosecutorial misconduct, repeats claim two's allegation of unconstitutional detention pending preparation and execution of the search warrant and combines it with allegations that (2) DEA agent Kevin Fitchett lied to a Texas state judge to obtain the search warrant; (4) ATF agent Mike Russell lied to the grand jury; (5) an Assistant U.S. Attorney permitted a government witness to have sex with his girlfriend in return for false testimony; (6) Officer Sam allowed another government witness to have sex with his girlfriend in return for false testimony; (7) Officer Sam persuaded Kendra Bagley to testify falsely against Petitioner; and (8) an Assistant United States Attorney lied to the trial judge concerning a prior statement made by Bagley.

**A.    Prosecutorial Misconduct**

Prosecutorial misconduct is a violation of constitutional guarantees of due process. *Phillips v. Ornoski*, 673 F.3d 1168, 1188 (9th Cir. 2012). "Unconstitutional prosecutorial misconduct occurs where the prosecutor engages in actions that 'so infec[t] the trial with unfairness as to make the resulting conviction a denial of due process.'" *Id.* (quoting *Greer v. Miller*, 483 U.S. 756, 765 (1987). To constitute a due process violation, the prosecutorial misconduct must be 'of sufficient significance to result in the denial of the defendant's right to a fair trial." *Greer*, 483 U.S. at 765 (quoting *United States v. Bagley*, 473 U.S. 667, 676 (1985)). In determining whether a prosecutor's challenged action rendered a trial fundamentally unfair, a court must place the challenged misconduct in the context of the trial as a whole. *Darden v. Wainwright*, 477 U.S. 168, 179 (1986).

**B.    Actual Innocence**

The multiple incidents of prosecutorial misconduct alleged in claim four concern legal claims, not Petitioner's factual guilt or innocence on the crimes of which he was convicted. Allegations of prosecutorial misconduct do not establish actual innocence under *Schlup*. "The required evidence must create a colorable claim of actual innocence, that the petitioner 'is innocent of the charge for which he [is] incarcerated,' as opposed to 'legal innocence as the result of legal error.'" *Gandarela v. Johnson*, 286 F.3d 1080, 1085 (9th Cir. 2002) (quoting *Kuhlmann*

1 | *v. Wilson*, 477 U.S. 436, 452 (1986), and *Sawyer*, 505 U.S. at 339.

2 | **C.**   **Unobstructed Procedural Shot**

3 | Again, Petitioner not only had multiple unobstructed procedural opportunities to advance

4 | this claim, he actually advanced the claim in multiple prior proceedings.

5 | As discussed in claim one, Kendra Bagley's testimony and the sex-for-testimony

6 | accusations were advanced in Petitioner's direct appeal, in (1) a challenge to the sufficiency of

7 | the evidence, (2) a claim that the trial court erred in denying the defendants' new trial motion, and

8 | (3) in the defendants' *Brady* claim.

9 | Petitioner first labeled the claims as prosecutorial misconduct in the context of the

10 | ineffective assistance of counsel claims alleged in his first (1999) § 2255 motion.  Doc. 24-9.

11 | Petitioner argued that both of his trial counsel failed to take the necessary legal steps to discover

12 | and object to the prosecutorial misconduct that deprived Petitioner of his due process rights.

13 | Curiously, Petitioner did not directly claim prosecutorial misconduct, although he specifically

14 | alleged that Fitchett lied to obtain the search warrant, Russell lied to the grand jury, government

15 | witnesses were permitted sexual encounters in return for testimony, and the Assistant United

16 | States Attorney lied to the trial judge.

17 | In his 2014 motion to the Fifth Circuit for authorization to file a second or successive

18 | § 2255 motion, Petitioner again contended that (1) Fitchett lied to obtain the search warrant, (2)

19 | Petitioner was illegally detained in the traffic stop, and (3) that Kendra Bagley offered false

20 | testimony pursuant to her plea agreement.  As previously stated, the Fifth Circuit denied

21 | authorization.

22 | **D.**   **Summary**

23 | Because Petitioner can establish neither prong of the *Bousley* test, he may not pursue

24 | claim four in a § 2241 petition in this Court.

25 | **VII.**   **Certificate of Appealability**

26 | A petitioner seeking a writ of habeas corpus has no absolute entitlement to appeal a

27 | district court's denial of his petition, but may only appeal in certain circumstances.  *Miller-El v.*

28 | *Cockrell*, 537 U.S. 322, 335-36 (2003).  The controlling statute in determining whether to issue a

certificate of appealability is 28 U.S.C. § 2253, which provides:

> (a) In a habeas corpus proceeding or a proceeding under section 2255 before a district judge, the final order shall be subject to review, on appeal, by the court of appeals for the circuit in which the proceeding is held.
>
> (b)  There shall be no right of appeal from a final order in a proceeding to test the validity of a warrant to remove to another district or place for commitment or trial a person charged with a criminal offense against the United States, or to test the validity of such person's detention pending removal proceedings.
>
> (c)    (1) Unless a circuit justice or judge issues a certificate of appealability, an appeal may not be taken to the court of appeals from—
>
> > (A)  the final order in a habeas corpus proceeding in which the detention complained of arises out of process issued by a State court; or
> >
> > (B)  the final order in a proceeding under section 2255.
>
> (2)  A certificate of appealability may issue under paragraph (1) only if the applicant has made a substantial showing of the denial of a constitutional right.
>
> (3)  The certificate of appealability under paragraph (1) shall indicate which specific issues or issues satisfy the showing required by paragraph (2).

If a court denies a habeas petition, the court may only issue a certificate of appealability "if jurists of reason could disagree with the district court's resolution of his constitutional claims or that jurists could conclude the issues presented are adequate to deserve encouragement to proceed further." *Miller-El*, 537 U.S. at 327; *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Although the petitioner is not required to prove the merits of his case, he must demonstrate "something more than the absence of frivolity or the existence of mere good faith on his  . . . part." *Miller-El*, 537 U.S. at 338.

Reasonable jurists would not find the Court's determination that it lacks jurisdiction over the pending § 2241 petition to be debatable or wrong, or conclude that the issues presented required further adjudication.  Accordingly, the Court declines to issue a certificate of

appealability.

**VIII.   <u>Conclusion and Order</u>**

It is hereby ORDERED that:

1.      The petition for writ of habeas corpus pursuant to 28 U.S.C. § 2241 is

DISMISSED with prejudice;

2.      The Court DECLINES to issue a Certificate of Appealability; and

3.      The Clerk of Court is DIRECTED to enter judgment for Respondent.

IT IS SO ORDERED.

Dated:   __**December 19, 2016**__               _____/s/ *Sheila K. Oberto*_____

UNITED STATES MAGISTRATE JUDGE

22